[Civ. No. 914.    Second Appellate District.—April 1, 1911.]

JENNIE BONDY, Respondent, v. AMERICAN TRANSFER COMPANY, a Corporation, Appellant.

ACTION FOR CONVERSION—WRONGFUL SALE OF BUSINESS TRUNK STORED—SALE FOR CHARGES NOT DUE—ABSENCE OF NOTICE TO BAILOR—COMPLAINT — IMPROPER MOTION TO STRIKE OUT.—In an action against a storage company for the wrongful conversion of a business trunk stored for an indefinite time under an agreed rate of compensation to be paid when the trunk was called for, and which was wrongfully sold without notice to the bailor, for storage charges not due under the contract, it is held that while the complaint was more specific in its statement of facts than is required in an ordinary action for conversion, yet that there was no error in refusing to strike out a whole paragraph of the complaint, which contained allegations of the wrongful conversion and disposal of the trunk by the defendant.

ID.—SURPLUS AVERMENTS OF COMPLAINT—MODE OF ACQUISITION OF PROPERTY BAILED TO DEFENDANT.—It is held that averments in the complaint for conversion, as to the mode of acquisition by the plaintiff of the property bailed by her to the defendant, may be treated as surplusage.

ID.—BUSINESS VENTURE BY MARRIED WOMAN—SEPARATE PROPERTY—ANTENUPTIAL AGREEMENT—REAL PARTY IN INTEREST.—Where the contents of the trunk were robes, laces, etc., of great value, in respect of which the plaintiff, though a married woman, had the right to engage in a business venture on her own behalf, in pursuance of an antenuptial agreement between herself and her husband that all business ventures in which she might engage, and all profits which she might derive therefrom, should be her separate property, she was entitled to sue in her own name, as the real

party in interest, for the wrongful conversion of the business trunk bailed by her to the defendant.

ID.—PLEA OF NONJOINDER OF HUSBAND BY ANSWER—HUSBAND NOT A NECESSARY PARTY.—While the complaint did not disclose that plaintiff was a married woman, but it was pleaded in the answer to show the nonjoinder of the husband as a party plaintiff, yet it being established by the evidence that plaintiff's special property in the converted goods was her separate estate, under section 370 of the Code of Civil Procedure, she is permitted to maintain the action without her husband being joined.

ID.—ACTION BY BAILOR AGAINST BAILEE—TITLE OF THIRD PERSON—ESTOPPEL OF BAILEE.—That the plaintiff was a bailor of the business trunk is determined by the findings which have support in the evidence, and in an action by a bailor against a bailee, the latter cannot set up the title of a third person except by the authorization of that person; and this estoppel applies as well to the title of the owner, who had intrusted the goods to the plaintiff for a business venture, as to the husband on account of any community interest which he might have.

ID.—SPECIAL INTEREST OF BAILOR SUPPORTING ACTION.—It is sufficient to support the action that plaintiff, as bailor, had a special interest in the property bailed as her own separate estate.

ID.—CONTRACT OF STORAGE INDEPENDENT OF CONTRACT OF CARRIAGE—BAGGAGE CHECKS TO HUSBAND IMMATERIAL.—It is of no importance that all of the baggage checks of the transported trunks were in the name of the husband, where the contract for storage of the business trunk was wholly independent of their transportation, and was made by the plaintiff personally with the storage company as bailor, and was a contract which the defendant had the right and authority to make.

ID.—ASSUMPTION OF CORPORATE AUTHORITY TO STORE TRUNKS—ESTOPPEL.—The defendant having assumed that it had the right under its general articles of corporation to take and receive trunks in storage under a special contract, and having made such contract, it should not be heard to say that such act was not necessary to carry into effect the purposes for which the corporation was formed.

ID.—CHANGE OF RELATION FROM CONTRACT OF TRANSPORTATION TO CONTRACT OF STORAGE—PHYSICAL DELIVERY OF TRUNK NOT REQUIRED.—It was not necessary, in order to change the relation of carriage of the business trunk of plaintiff to one of storage, that it should be delivered up as carrier before the contract for storage was made by the plaintiff with the defendant. The contract for storage had the effect to change the relation as much as though it had been formally delivered up by defendant as a common carrier, and then received by it independently as a warehouseman.

ID.—LIMITATION OF LIABILITY IN CARRIAGE CONTRACT INAPPLICABLE TO
    STORAGE CONTRACT.—The limitation of liability in the common car-
    rier's receipt has nothing whatever to do with the liability which
    ensued by its independent contract as a warehouseman when re-
    ceiving a trunk stated to be a business trunk of valuable contents.

APPEAL from a judgment of the Superior Court of Los
Angeles County.    Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Frank W. Burnett, for Appellant.

Frank G. Finlayson, for Respondent.

ALLEN, P. J.—The action was brought on account of an
alleged conversion by defendant of property belonging to
plaintiff.    It appears from the findings that defendant was a
common carrier, and in connection with such business carried
on a storage business in the city of Los Angeles and kept and
maintained a place used by it for the storage of goods for
hire; that one Madam Yovin, engaged in business in New
York, was the owner of certain robes and laces of great
value; that she entered into a contract with plaintiff through
which plaintiff was to take such goods to Los Angeles, open
a place of business and sell the same, and out of the pro-
ceeds as sold to pay to Madam Yovin a stipulated price, and
that all profits should be the property of plaintiff.    Plaintiff,
at the time of making such contract, was a married woman,
the wife of one Leon Bondy, with whom, however, she had
made an antenuptial contract, through which it was agreed
that all earnings or profits earned by plaintiff in any occupa-
tion at any time during the marriage should be the property
of plaintiff.    Plaintiff, pursuant to her agreement with Madam
Yovin, accepted from the latter a trunk containing the robes,
laces, etc., which trunk, with four others containing personal
belongings of plaintiff and her husband, was carried by the
railroads from New York to Los Angeles as baggage.    That
after the arrival of said trunks at Los Angeles plaintiff re-
moved the four containing her personal belongings, but the
trunk containing the property of Madam Yovin was stored
with defendant for an indefinite time at a fixed compensation,

payable upon delivery of the trunk.   At the time of the storage plaintiff notified the defendant that the trunk was a business trunk and was very valuable; that after receiving said trunk in storage defendant, on the twenty-third day of May, 1908, and within five months after its receipt, without any notice of any kind or character to plaintiff, other than a published notice in a newspaper which was never seen by plaintiff, sold the trunk of plaintiff and the same was lost to plaintiff.   At the time of such sale the trunk and contents were of the value of $2,794.78; that the contents of said trunk were not baggage nor perishable property.   Defendant knew that said trunk contained merchandise and not baggage, and at the time of sale, the right to which defendant claimed on account of default in payment of storage charges, there were no storage charges due or payable under the terms of the contract of storage.   Upon these facts the court rendered its judgment in favor of plaintiff, from which defendant appeals upon a bill of exceptions.

We see no error in the first point made by appellant with reference to the refusal of the court to strike out paragraph 7 of the complaint.   The complaint, having set forth the facts as narrated by the findings, alleged in terms by paragraph 7 the wrongful conversion and disposal of said trunk and its contents.   We regard the complaint as essentially one for conversion.   While it may be true that the complaint was more specific in its statement of facts than would be required in an ordinary action for conversion, these allegations with reference to the manner in which the property was acquired may be treated as surplusage.

It is next claimed that plaintiff was not a proper party plaintiff, not being the real party in interest, and that the husband should have been made a party plaintiff.   We do not recognize any merit in these contentions.   Under the terms of the antenuptial contract, the profits and risks in this business venture were the separate property of plaintiff.   (*Wren* v. *Wren*, 100 Cal. 276, [38 Am. St. Rep. 287, 34 Pac. 775]; *Kaltschmidt* v. *Weber*, 145 Cal. 596.)   That the plaintiff was a bailor is determined by the findings, which have support in the evidence, and in an action by a bailor against a bailee the latter cannot set up the title of a third person, except by authorization of that person (*Palmtag* v. *Doutrick*, 59 Cal.

168, [43 Am. Rep. 245]; *Dodge* v. *Meyer,* 61 Cal. 423; *Wetherly* v. *Straus,* 93 Cal. 287, [28 Pac. 1045]); and this estoppel applies as well to the title of the owner, who had intrusted the goods to plaintiff, as to the husband on account of any community interest which he might have. Plaintiff, as bailor, had a special interest in this property as her own separate estate, and was therefore the real party in interest. We attach no importance whatever to the baggage checks given to the husband by the railroad company, or any acts of his in connection with their transportation to Los Angeles. Sufficient it is to say, that the contract with reference to storage, as distinguished from any liability as a common carrier, was a contract made between plaintiff and defendant and a contract which defendant had a right and authority to make. If its liability were to be tested by the authority given it under its articles of association, they provide in terms that the defendant is authorized to do all acts that may be necessary in order to carry into force and effect any of the purposes for which the corporation is formed. It assumed in this instance that one of these acts was to take and receive the property then held by it as a common carrier upon storage. Having made such contract, it should not be heard to say that such act was not necessary to carry into effect the purposes for which the corporation was formed.

It is further claimed by appellant that the defendant never received possession of the trunk under the contract of storage, because it already held possession under a contract as a common carrier. It is not necessary, in order to change the relation, that there should be a physical delivery to plaintiff of the trunk then in their possession. This is recognized by section 2121 of the Civil Code, through which a common carrier, by giving notice after the arrival, can, without the acquiescence of the other party, change such relation and substitute others in the new relation. The contract for storage had the effect to change the relation as much as though the property had formally been delivered by defendant to a common carrier and then received independently as a warehouseman. The limitation of liability in the common carrier's receipt has nothing whatever to do with the liability which ensued by virtue of the independent contract as a warehouseman.

While the complaint did not disclose that plaintiff was a married woman, that fact was alleged in the answer, and under the evidence, it being established that plaintiff's special property in the converted goods was her separate estate, under section 370, Code of Civil Procedure, she is permitted to maintain the action without her husband being joined.

An examination of the record discloses no prejudicial error, and the judgment is affirmed.

James, J., and Shaw, J., concurred.